**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000683
18-JAN-2017
08:09 AM**

NO. CAAP-15-0000683

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellant,
v.
JUNITA KUAHIWINUI-BECK, Defendant-Appellee

APPEAL FROM THE DISTRICT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5DTA-15-00007)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Plaintiff-Appellant State of Hawai'i (**State**) appeals from the "Findings of Fact, Conclusions of Law and Decision and Order Granting Motion to Suppress Evidence and Statements Filed on July 21, 2015" (**FOF/COL/Order**), entered on August 31, 2015, in the District Court of the Fifth Circuit (**district court**).[1] The district court granted Defendant-Appellee Junita Kuahiwinui-Beck's (**Kuahiwinui-Beck**) motion to suppress a breath sample and test result obtained from her on the day of her arrest and any statements she made to police after her arrest, on the grounds that she was unlawfully arrested for Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**) under Hawaii Revised Statutes (**HRS**) § 291E-61(a) (Supp. 2015).

On appeal, the State argues the district court erred in determining that Officer Christopher Cabrera (**Officer Cabrera**), the arresting officer, lacked probable cause to arrest

---

[1] The Honorable Trudy K. Senda presided.

Kuahiwinui-Beck: (1) after erroneously denying the State's request to construe Kuahiwinui-Beck's refusal to participate in Standardized Field Sobriety Testing (**SFST**) as consciousness of guilt, and failing to explain the basis for its denial, in light of the undisputed indicia of Kuahiwinui-Beck's intoxication at the time of her arrest; (2) based in part on a clearly erroneous finding that Officer Cabrera had no credible way of determining Kuahiwinui-Beck's breath or blood alcohol level at the time of arrest; (3) after erroneously relying on Officer Cabrera's failure to emphatically opine that Kuahiwinui-Beck had been drinking and was under the influence of alcohol when he had observed her on prior occasions, later in the day, with slurred speech; (4) after erroneously failing to consider the totality of circumstances, including Kuahiwinui-Beck's red, watery, glassy, and bloodshot eyes, slightly slurred speech, and refusal to participate in the SFST, and placing an undue emphasis on Officer Cabrera's testimony that he did not observe Kuahiwinui-Beck's motor skills, apart from her speech, to be impaired. Related to these arguments is the State's contention that Conclusions of Law (**COL**) 4 and 7 in the FOF/COL/Order are wrong.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the State's points of error as follows and affirm.

We first note that, because the State does not challenge the district court's findings of fact, the findings are binding on this court. <u>State v. Griffin</u>, 126 Hawai'i 40, 53, 266 P.3d. 448, 461 (App. 2011). The district court made the following findings:

> 1. On the evening of December 5, 2014, a Kauai Police Department dispatch operator received a "911" call reporting that three bombs had been planted at the Kauai Veteran's Ceneter [sic] in Lihue. The "911" call came from a pay phone located near the Mermaids Café in Kapaa, Kauai.
>
> 2. Cabrera and other officers of the Kauai Police Department reported to the vicinity of Mermaids Café to investigate the bomb threat call.
>
> 3. Cabrera arrived at the scene at approximately 8:04 p.m. Officer Hanson Hsu (hereinafter "Hsu") interviewed a witness at the scene who claimed that a male recently used

the pay phone (from which a bomb threat was called in) and that the male entered a truck in an adjacent parking lot. Cabrera overheard the witness' statements to Hsu. Cabrera saw the witness point to the truck into which the male had entered.

4. [Kuahiwinui-Beck] was the operator of the truck.

5. Based on the witness statement, Cabrera focused his attention on the truck, which had begun to leave the area. Cabrera followed the truck in his patrol car and, while in pursuit of the truck, observed that the truck had an expired safety sticker.

6. Cabrera effected a traffic stop and ordered the occupants out of the vehicle to determine their identities. Cabrera estimated that it took one minute or less between the time he entered his patrol car to the time that he pulled the truck over on Kuhio Highway.

7. While observing the truck, Cabrera did not observe bad or erratic driving which would have indicated impairment of the operator while the truck was in motion.

8. At some point after directing the occupants out of the truck, Officer Aaron Bandmann directed Cabrera that the truck's occupants could be released relative to the bomb threat investigation.

9. After being ordered out of the truck, [Kuahiwinui-Beck] was observed by Cabrera to have red, bloodshot, watery, glassy eyes. Cabrera testified that he could smell an odor of alcohol emanating from [Kuahiwinui-Beck] as she spoke.

10. According to Cabrera, [Kuahiwinui-Beck] was upset about being pulled over. Cabrera noted that [Kuahiwinui-Beck] had slightly slurred speech.

11. Cabrera testified that he had prior contacts with [Kuahiwinui-Beck]. He had spoken to [Kuahiwinui-Beck] on prior occasions; during those occasions, Cabrera said [Kuahiwinui-Beck's] speech in the morning was normal but that during his conversations with [Kuahiwinui-Beck] later in the daytime, [Kuahiwinui-Beck's] speech would be slightly slurred. Cabrera did not testify that on these prior occasions, he knew that [Kuahiwinui-Beck] was under the influence of drugs or alcohol during the latter part of the days.

12. During the traffic stop, Cabrera did not observe any deficiencies or apparent difficulties in [Kuahiwinui-Beck's] manual dexterity, walking, standing or balance.

13. Cabrera suspected that [Kuahiwinui-Beck] was under the influence of an intoxicant and asked if [Kuahiwinui-Beck] would consent to take [the SFST].

14. Cabrera explained to [Kuahiwinui-Beck] that if she was not willing to take the SFST she would be arrested. He again made a request for [Kuahiwinui-Beck] to take the SFST.

15. [Kuahiwinui-Beck] began to argue with Cabrera about why she was pulled over and Cabrera told [Kuahiwinui-Beck] that now was not the time to argue. Cabrera then

demanded a response to his request (for [Kuahiwinui-Beck] to take the SFST); when Cabrera did not receive an affirmative response from [Kuahiwinui-Beck], Cabrera arrested [Kuahiwinui-Beck] for [OVUII].

16. [Kuahiwinui-Beck's] breath alcohol content was later tested by the use of an Intoxilyzer at the Kauai Police Department cellblock.

Given the investigation about the bomb threat, the parties do not dispute that Officer Cabrera was justified in stopping Kuahiwinui-Beck's truck and ordering her out of the vehicle. The dispute is focused instead on whether there was probable cause to arrest Kuahiwinui-Beck for OVUII.

(1) Relying on State v. Ferm, 94 Hawai'i 17, 7 P.3d 193 (App. 2000), the State argues that the district court erred in failing to construe Kuahiwinui-Beck's refusal to submit to the SFST as consciousness of guilt. However, in Ferm, this court did not hold that in an OVUII case a court must weigh against a defendant his or her refusal to submit to an SFST. The State does not cite to any authority to support this assertion, or its assertion that a court must explain its reasons for not construing a refusal as evidence of guilt. We note that the circumstances in Ferm were quite different than in this case. This court's ruling in Ferm, that the trial court did not err in considering Ferm's refusal to submit to the SFST, 94 Hawai'i at 29-30, 7 P.3d at 205-06, does not mean the district court erred under the circumstances of this case in apparently not considering Kuahiwinui-Beck's refusal to submit to the SFST as consciousness of guilt.

"[A]s trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence[.]" State v. Eastman, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996) (block quotation format, quotation marks, and citation omitted). It follows that, conversely, the district court was free to not infer consciousness of guilt from Kuahiwinui-Beck's refusal to submit to the SFST. Officer Cabrera testified that prior to her arrest, Kuahiwinui-Beck repeatedly questioned why she had been pulled over. Given the totality of the

circumstances, the district court may have reasonably inferred that Kuahiwinui-Beck refused because she believed the stop was improper.

The State also argues that the district court erred in considering that Officer Cabrera did not observe any deficiencies or apparent difficulties in Kuahiwinui-Beck's "manual dexterity, walking, standing or balance" during the traffic stop, where Kuahiwinui-Beck's refusal to submit to the SFST prevented the officer from observing any problems she may have had in these areas. However, when determining in OVUII cases whether sufficient evidence of intoxication exists, this court consistently has considered a defendant's coordination, balance, and/or dexterity apart from their performance on the SFST. See, e.g., Ferm, 94 Hawaiʻi at 20, 27, 7 P.3d at 196, 203; State v. Mitchell, 94 Hawaiʻi 388, 391, 399, 15 P.3d 314, 317, 325 (App. 2000); State v. Ballesteros, (SDO) No. CAAP-16-0000031, 2016 WL 5660314, at #1 (Haw. App., Sept. 30, 2016). The district court did not err by weighing in Kuahiwinui-Beck's favor her ability to exit her vehicle without exhibiting any coordination, balance, or dexterity problems.

(2) In COL 4, the district court concluded that "[Officer Cabrera] had no credible way of determining [Kuahiwinui-Beck's] breath or blood alcohol level at the time of [her] arrest." The State asserts COL 4 is wrong because "there is simply no requirement that an officer determine a driver's breath or blood alcohol level before arresting him or her for OVUII." The State's argument misconstrues the district court's ruling. The district court was not indicating that an officer must determine a driver's breath or blood alcohol level before making an arrest. Rather, the district court appears to have been considering that under HRS § 291E-61(a)(3) and (a)(4), a person can commit OVUII based on the person's breath or blood alcohol level, and without knowing those levels for Kuahiwinui-Beck at the time, Officer Cabrera did not have probable cause to arrest her based on HRS § 291E-61(a)(3) or (a)(4). The State's argument on this point thus lacks merit.

(3)   To support its assertion that Kuahiwinui-Beck's slightly slurred speech was evidence of her intoxication, the State adduced Officer Cabrera's testimony that when he had spoken with Kuahiwinui-Beck at various times before the date of the incident, her speech had been normal in the morning and slightly slurred later in the day.  This was intended to support an inference that Kuahiwinui-Beck drank alcohol later in the day, and that she had again done so on the day of her arrest.  The State appears to argue that the district court did not accord sufficient weight to Officer Cabrera's testimony about his prior contacts with Kuahiwinui-Beck.  However, Officer Cabrera did not identify or testify about the cause of Kuahiwinui-Beck's slurred speech on prior occasions.  Thus, the district court properly concluded that Officer Cabrera "did not opine that Kuahiwinui-Beck was under the influence and impaired on those prior occasions."

(4)   In COL 7, the district court concluded that "[b]ased on the totality of the circumstances, [Officer Cabrera] lacked probable cause to arrest [Kuahiwinui-Beck] for OVUII." Although Hawai'i appellate courts have considered such factors as (1) red, bloodshot, watery, and/or glassy eyes, (2) an odor of alcohol on the defendant's breath, and (3) slightly slurred speech to be evidence of intoxication, such factors are typically considered in conjunction with other evidence indicating intoxication or impairment in the operation of a vehicle.

Here, given the totality of the circumstances, we cannot say the district court erred in determining that Officer Cabrera lacked probable cause to arrest Kuahiwinui-Beck for OVUII.  At the time of her arrest, there was no probable cause that Kuahiwinui-Beck had violated HRS § 291E-61(a)(3) or (a)(4) based on her breath or blood alcohol level.  Moreover, as to HRS § 291E-61(a)(1), the circumstances at the time of Kuahiwinui-Beck's arrest included that Officer Cabrera: observed that she had red, bloodshot, watery, glassy eyes; could smell an odor of alcohol emanating from her as she spoke; observed that she had slightly slurred speech (which he testified to, but admitted he

did not include in his report); did not observe anything wrong with her driving, including that there was no weaving and no judgment issues; observed that she had no problems exiting the vehicle; observed that she had no lack of focus; and did not observe any deficiencies in her manual dexterity, walking, standing or balance. Given these circumstances, it does not appear there was probable cause that Kuahiwinui-Beck had operated her vehicle "[w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty" in violation of HRS § 291E-61(a)(1).

The district court did not err in COL 7 or in granting Kuahiwinui-Beck's motion to suppress.

Therefore, IT IS HEREBY ORDERED that the "Findings of Fact, Conclusions of Law and Decision and Order Granting Motion to Suppress Evidence and Statements Filed on July 21, 2015," entered on August 31, 2015, in the District Court of the Fifth Circuit, is affirmed.

DATED: Honolulu, Hawai'i, January 18, 2017.

On the briefs:

Tracy Murakami,
Deputy Prosecuting Attorney,
for Plaintiff-Appellant.

Craig A. De Costa,
(De Costa Hempey Meyers LLC)
for Defendant-Appellee

Presiding Judge

Associate Judge

Associate Judge

7